IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARTIN DAVIS,
# Y-11250,

**Plaintiff,**

v.  No. 3:17-cv-00894-DRH

ILLINOIS DEPARTMENT OF CORRECTIONS,
K. JAIMET, DR. BUTALID,
C/O BEBOUT, LT. MUNBOWER,
and JOHN DOE (1-3 Nurses),

**Defendants.**

# **MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an

objective standard that refers to a claim that "no reasonable person could supposed to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

On May 7, 2017, Plaintiff awoke to find that the right side of his face felt

stiff and numb. (Doc. 1, p. 3). By the following day, the right side of Plaintiff's face was completely numb and stiff.

At about 12:20 p.m., apparently on May 8 (Doc. 1, p. 6), Plaintiff notified C/O Bebout that he could not move or feel the right side of his face, and requested medical attention. (Doc. 1, p. 3). Bebout contacted the nurse at the Health Care Unit ("HCU") to relay Plaintiff's "medical emergency." *Id.* Bebout reported back to Plaintiff that someone at the HCU (the Court shall identify this person as Nurse John Doe #1[1]) told him that Plaintiff's problem was "not an emergency," and Plaintiff should submit a request to see the next available nurse. (Doc. 1, p. 3). Bebout ordered Plaintiff back to his cell.

At around 12:50 p.m., Plaintiff called out to Lt. Munbower, who was walking nearby, and asked Munbower to come to his cell because he had a medical emergency. (Doc. 1, pp. 3-4). Munbower ignored Plaintiff. Sometime later, Plaintiff approached Warden Jaimet and asked her to speak with him at his cell. She did not come to Plaintiff's cell.

At approximately 7:20 p.m., Plaintiff again asked for help, and told Lt. James (who is not a Defendant) about his symptoms. James escorted Plaintiff to the HCU. Nurse John Doe #2[2] checked Plaintiff, and told him that he was fine and nothing was wrong with him. (Doc. 1, p. 4). This nurse had Plaintiff sign an

---

[1] Although Plaintiff did not see this individual in person, the Court shall designate the person (presumably a nurse) who answered Bebout's call as Nurse John Doe #1.

[2] As Plaintiff did not distinguish between the John Doe Nurses or explain whether he consulted the same individual nurse more than once, the Court has designated the nurse who had this encounter with Plaintiff as Nurse John Doe #2.

order to pay for the emergency medical visit.  (Doc. 1, p. 5).

On May 9, 2017, Plaintiff phoned his family and informed them of his health situation.  Family members then contacted officials in Springfield and at Pinckneyville seeking help for him.

At 8:40 a.m. on May 9, Plaintiff asked Bebout for permission to see a nurse.  Bebout notified a nurse, and Plaintiff was called to see Nurse John Doe #3.[3]  Nurse John Doe #3 saw that the right side of Plaintiff's face was not moving at all.  This nurse called the HCU to check on the availability of a doctor (Plaintiff says that Pinckneyville did not have a doctor at the time).   Nurse John Doe #3 then put in an order for Plaintiff to see the doctor.  (Doc. 1, p. 5).

Plaintiff states that on May 11, 2017, he again "pleaded to Defendants for medical attention."  (Doc. 1, p. 6).  He was called to the HCU that same day to see Dr. Butalid.  The doctor examined Plaintiff, and diagnosed him with Bell's palsy.  Plaintiff was given medication to treat the condition, and Dr. Butalid told Plaintiff that he would have a checkup within the next week.  (Doc. 1, p. 6).  However, this follow-up never happened.  (Doc. 1, p. 7).  Plaintiff's medication was stopped in July 2017.  Plaintiff claims the right side of his face is paralyzed.  (Doc. 1, p. 6).

Plaintiff asserts that the Defendants' actions constituted deliberate indifference to a serious medical need, and denied him the right to medical care, invoking the Fourth Amendment.  (Doc. 1, pp. 7-8).  He seeks compensatory and punitive damages from the individual Defendants and from the Illinois

---

[3] The Court has designated the nurse involved in this medical visit as Nurse John Doe #3.

Department of Corrections. *Id.*

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim against Bebout, Munbower, Jaimet, and the Illinois Department of Corrections, for deliberate indifference to Plaintiff's symptoms of sudden facial paralysis;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against John Doe Nurses #1, #2, and #3, for failing to provide Plaintiff with medical attention for his symptoms of sudden facial paralysis;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Dr. Butalid, for failing to provide continuing care for Plaintiff's condition after diagnosing him with Bell's palsy.

Each of these counts shall proceed for further consideration against some of the Defendants. However, other Defendants shall be dismissed from the action.

### Count 1 – Deliberate Indifference – Non-Medical Defendants

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "A 'serious' medical need is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). An ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain also satisfies the objective requirement. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, the sudden and severe onset of Plaintiff's symptoms of facial paralysis presented a condition that a layperson would recognize as calling for medical

attention. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the non-medical Defendants and/or Plaintiff's medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

Taking the Defendants in sequence, when Plaintiff first notified C/O Bebout on May 8, 2017, that he could not move or feel half of his face, Bebout contacted the HCU to seek assistance for Plaintiff. However, the person who received his call (Nurse John Doe #1) responded that Plaintiff's symptoms did not present an emergency, and Plaintiff should go through the normal sick call system to be seen. Having promptly sought medical help for Plaintiff, and learning that in the judgment of a medical official, Plaintiff's symptoms did not warrant immediate attention, it is not clear what else Bebout could have done to help Plaintiff at that time. "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Bebout's actions described in the Complaint do not suggest that he was deliberately indifferent to Plaintiff's need for medical assistance; to the contrary, he took reasonable measures to get help from a medical provider.

The second time that Plaintiff sought help from Bebout to see a nurse also fails to support a deliberate indifference claim against this officer. On May 9, 2017, Bebout notified a nurse that Plaintiff needed assistance, and Plaintiff was seen by Nurse John Doe #3, who then referred him to a doctor. In this instance,

like the first, Bebout sought medical care for Plaintiff, thus recognizing the risk to Plaintiff's health and taking action to mitigate that risk. Accordingly, the deliberate indifference claim against Bebout in **Count 1 shall be dismissed without prejudice**.

On May 8, 2017, soon after Nurse John Doe #1 told Bebout that Plaintiff's problem was not an emergency, Plaintiff spoke to Lt. Munbower as he passed by. Plaintiff told Munbower that he had a medical emergency, and asked Munbower to come to his cell. Munbower ignored Plaintiff's request.

Plaintiff does not claim that he told Munbower about his specific symptoms, or in any way explained the nature of what he claimed to be a "medical emergency." (Doc. 1, p. 3-4). It thus does not appear that Munbower knew anything about Plaintiff's condition, other than Plaintiff's statement that he had a medical emergency and needed help. Even so, an official who learns that an inmate has a medical problem of an emergency nature should be expected to respond in some way, rather than simply ignore the request for assistance. At this early stage, the deliberate indifference claim against Munbower in **Count 1 shall be allowed to proceed for further review**.

Plaintiff had a similar encounter with Warden Jaimet later on May 8. According to the Complaint, Plaintiff asked Jaimet to speak with him at his cell. However, she ignored his request. Notably, Plaintiff does not allege that he told Jaimet why he wanted to speak with her – he did not tell her that he had a medical problem, let alone one that he considered an emergency. As such, Jaimet

had no information at all about what Plaintiff wanted to discuss, let alone any inkling that he had a medical complaint. Absent any knowledge of Plaintiff's health issues, Jaimet cannot be found to have violated his constitutional rights. She could not have been deliberately indifferent to a health risk that she knew nothing about. For this reason, **the claim against Jaimet shall be dismissed without prejudice**.

Finally, even if Plaintiff ultimately proves that one or more of the Defendants were deliberately indifferent to his serious medical condition, he cannot obtain money judgment against the Illinois Department of Corrections ("IDOC") based on the wrongdoing of a prison official. The IDOC is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same). For this reason, **the Illinois Department of Corrections shall be dismissed from the action with prejudice**.

To summarize, **Count 1 shall proceed only against Munbower**.

### Count 2 – Deliberate Indifference – Nurses

Plaintiff has not identified any of the nurses by name. Before service can be

made on any of the "John Doe" individuals who will remain in the action, Plaintiff must determine their identity and inform the Court.

Nurse John Doe #1 is the person who told Bebout on May 8, 2017, that Plaintiff's symptoms did not amount to an emergency, and refused to evaluate or treat him at that time. This caused some delay before Plaintiff was able to see a medical professional. At this point, it cannot be determined whether that delay compromised the diagnosis or treatment of Plaintiff's condition or made his symptoms worse. Further factual development will be necessary in order to evaluate whether Nurse John Doe #1's decision to require Plaintiff to wait for treatment amounted to deliberate indifference to his medical needs. Therefore, **Count 2 may proceed against Nurse John Doe #1, once this person is identified**.

Nurse John Doe #2 was the first medical provider to evaluate Plaintiff, and saw him on May 8, 2017. This nurse told Plaintiff that he was fine and nothing was wrong with him, and offered no treatment or referral to a doctor. At the time, Plaintiff was unable to move or feel the right side of his face. Further investigation may reveal that Nurse John Doe #2's failure to recognize Plaintiff's symptoms and take action was due to negligence or incompetence, which would not amount to a constitutional violation. On the other hand, Nurse John Doe #2 may have been deliberately indifferent by consciously ignoring his symptoms. At this early stage of the case, **the deliberate indifference claim against Nurse John Doe #2 in Count 2 survives review under § 1915A**.

Nurse John Doe #3 examined Plaintiff on the morning of May 9, 2017. This nurse recognized that Plaintiff could not move the right side of his face, and took prompt steps to make sure that he would see a doctor. Plaintiff was called to see the doctor on May 11. Nothing in this sequence of events suggests any deliberate indifference on the part of Nurse John Doe #3. Therefore**, the claim against Nurse John Doe #3 shall be dismissed without prejudice**.

**Count 2 shall proceed only against Nurse John Doe #1 and Nurse John Doe #2**. However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Nurse John Doe #1 and Nurse John Doe #2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

**Count 3 – Deliberate Indifference – Dr. Butalid**

When Dr. Butalid saw Plaintiff on May 11, 2017, he diagnosed Plaintiff's condition as Bell's palsy. He ordered medication, which Plaintiff received until sometime in July 2017. Plaintiff's chief complaint against Dr. Butalid is that he

failed to call Plaintiff back for a follow-up appointment as he told Plaintiff he would do. The Complaint also suggests that Plaintiff's facial paralysis has continued, although it is not entirely clear on that point. (Doc. 1, p. 6).

Dr. Butalid's apparent failure to monitor Plaintiff's condition while he took the prescribed medication could amount to deliberate indifference to his medical needs. This concern would be heightened if Plaintiff's facial paralysis is still ongoing, after his medication was discontinued. At this stage, **Plaintiff's deliberate indifference claim against Dr. Butalid in Count 3 shall also move forward**.

## Pending Motion

The motion for service of process at government expense (Doc. 3) shall be **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

## Disposition

Defendant **ILLINOIS DEPARTMENT of CORRECTIONS** is **DISMISSED** from this action with prejudice. Defendants **JAIMET, BEBOUT,** and **NURSE JOHN DOE #3** are **DISMISSED from this action without prejudice**.

The Clerk of Court shall prepare for Defendants **BUTALID** and **MUNBOWER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum

and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **NURSE JOHN DOE #1 and NURSE JOHN DOE #2** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United

States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
Signed this 2nd day of October, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.10.02
11:35:56 -05'00'

**UNITED STATES DISTRICT JUDGE**